PACE *vs.* PAYNE.

1. Requests to charge, which are inapplicable to the facts of the case, should be refused.

2. Whenever one person consents or agrees, in any manner, that another shall have and hold any interest in real estate, and the latter is either in possession or takes possession at the time of the giving of such consent or the making of such agreement, then the party agreeing or consenting will be presumed to have had notice that the other held adversely to him all that he consented that such other party might hold as his own.

(*a.*) The statute of limitations does not begin to run in favor of a trustee against the person for whom he holds until his possession becomes adverse, tortious and wrongful by his disloyal act, which must be open, continued and notorious, so as to preclude all doubt as to the character of the holding of the property or the want of knowledge on the part of the *cestui que trust*.

(*b.*) While requests to charge may not have been numbered, yet, if it appears that they were separately asked for and refused, and that they were not contained in one entire and connected request to charge, a refusal to give one of them may be assigned as error; and if such request contains a legal principle pertinent to the case, and the charge does not embody such principle, but gives, in detail, the theory of the other side of the case, such refusal will cause a new trial.

(*c* ) While generally, if the entire charge be not brought up in the record, it will be presumed to have been correct, yet where a request containing a legal proposition pertinent to the case was refused, and the court charged to the contrary, the presumption in favor of the general charge is overcome.

(*d.*) The decisions complained of in this case were set out with sufficient distinctness.

December 19, 1884.

Prescription. Charge of Court. Notice. Trusts and Trustees. Practice in Supreme Court. Before Judge FAIN. Dade Superior Court. September Term, 1883.

To the report contained in the decision, it is only necessary to add, that counsel for defendant requested the court to give each of the following requests in charge:

" Adverse possession of land under written evidence of title for seven years gives title by prescription. But if

such title be forged or fraudulent, and notice thereof be brought home to the claimant before or at the time of the commencement of his possession, no prescription can be based thereon."

" Written evidence of title within the meaning of this section of the Code (referring to the section before requested to be given in charge), is any paper professing to pass the title, which serves to define the character and extent of the claim; and nothing can defeat it, unless such written evidence of title be forged or fraudulent, provided adverse possession has been held under it for seven years openly, notoriously, continuosly, uninterruptedly and peaceably, and with intent to claim it under such written evidence of title. A fraudulent paper, within the meaning of the Code, is one fraudulently procured; that is, one procured by deceitful means and artful practices. Every one is presumed to know the law, but because one is presumed to know the law, it does not therefore follow that conduct contrary to law is fraudulent; and if you believe from the evidence that Pace believed, at the time he brought on the sheriff's sale and bought the land under it, he had done all the law required him to do to make the sheriff's sale valid, the fact that he had not done so by having the deed to Gross recorded, while it will make the sheriff's deed void as legal paper title, it will not make it fraudulent as written evidence of title, so as to defeat his title by prescription; but, on the contrary, if he went into possession under such written evidence of title, and so continued for seven years, holding adversely to plaintiff's claim, his title is good by prescription."

" Whenever one person consents or agrees in any way that another person shall have and hold any interest in real estate, such person being then in possession, or at the time taking possession under such agreement or consent, the person so agreeing or consenting will be presumed to have notice that the person in possession or tak-

ing possession holds adversely to him all he consented he might hold as his own."

A verdict was rendered finding for complainant $33.60, and requiring defendant to make titles to him to the mineral interest and easements claimed. Defendant moved to set aside the verdict, on the ground that one juror was never sworn. This was overruled, and defendant excepted to this, and the refusal of the requests to charge stated above.

W. N. & J. P. JACOWAY; GRAHAM & GRAHAM, for plaintiff in error.

T. J. LUMPKIN; R. J. McCAMY; McCUTCHEN & SHUMATE, for defendant.

HALL, Justice.

The complainant exhibited his bill against the respondent, to compel the specific performance of a contract to sell and convey to him, upon certain conditions specified in a written agreement entered into between the respondent and one Gross, the right to the minerals on lot of land number 288, in the —— district and —— section of Dade county, together with certain easements and privileges relative to the mining of said minerals, and which contract had been assigned by Gross to complainant, as he alleges, with the full approbation and consent of defendant. He sets forth that he had fully complied with the conditions entitling him to a conveyance of these minerals and the rights and easements connected with the mining and appropriation of the same. The defendant admitted the contract with Gross and the assignment of the same to complainant, but denied that he had performed the conditions upon which he was entitled to the conveyance demanded. On the contrary, he insisted that he was compelled to reduce his claims against Gross to judgment; that the judgment was stayed by complainant's becoming secu-

rity for Gross, and when he demanded the money due on his judgment, complainant pointed out for levy the land embraced in the contract with Gross, including this mineral interest; that he executed a deed conveying these lands to Gross, filed the same with the clerk and had it recorded; caused a levy to be made upon these lands and this mineral interest, and purchased them at the sheriff's sale, and took the sheriff's deed thereto; that the lands sold did not bring a sufficient amount to satisfy his demand, and that complainant pointed out lands of his own, which were levied on to satisfy the balance still due on the execution after the proceeds of this sale had been applied.

It seems that the deed from defendant to Gross was not recorded until after the levy, and it is insisted for this reason, that the sale thereunder was invalid and of no effect; that it did not change the relations previously existing between the parties to the contract, and left them in the same position towards each other as they were before it took place. Complainant further alleged that defendant purchased the land at the sheriff's sale at his instance and in pursuance of an arrangement with him. This the defendant denies; he says that complainant endeavored to affect such an arrangement with him, but he declined. Besides this mineral interest, two other lots of land, numbers 156 and 157, in an adjoining district and section were conveyed by the sheriff, in pursuance of this sale, to the defendant. The defendant insists that he subsequently sold and conveyed these two lots to the complainant, at an advance of two hundred dollars upon his bid for them and the mineral interest; that the sheriff's sale put an end to complainant's rights under the contract with Gross, and that the contract by which complainant acquired titles to the two lots was independent of the former, and had no connection whatever therewith. Complainant asserts directly the contrary, and claims that he paid the entire amount contracted to be paid for these two lots of land

v 73-44

and the mineral interest on lot 288, which was much more valuable than both the other lots, it being worth fully three times as much as they were; he further contends that the deed to the two lots of land was never delivered to him, but was surreptitiously placed upon record and fraudulently attempted to be foisted upon him. Upon the question of this new agreement, which made the principal issue in the case, there was much evidence of a directly conflicting character, and after the charge of the court, the jury found for the complainant, and a specific execution of the original contracts was decreed on this verdict. The defendant did not seek to set it aside by moving a new trial, but brought the case here upon exceptions to charges given and refused by the court.

1. The defendant requested in writing certain charges which were refused; they related to the law of prescription, with and without written evidence of title, and the effect which that law would have upon the case when accompanied with adverse possession of this mineral interest, for the period prescribed in each instance by the statutes. We think these charges were properly refused, because the principles embodied in them were inapplicable to the facts in controversy.

2. Another written charge was requested by the defendant, which was likewise refused, to the effect that, " Whenever one person consents or agrees in any manner that another shall have and hold any interest in real estate, and the latter is either in possession or takes possession at the time of giving this consent or making the agreement, then the party agreeing or consenting will be presumed to have had notice that the other held adversely to him all that he consented he might hold as his own." This charge was directly applicable to the only material issue in the case which was controverted, and should have been given, unless it was contained in the same request with the others, which we have seen were inapplicable, and were properly refused. While it is true that these

charges were not numbered, yet it sufficiently appears from the record, as we think, that they were separately asked for, and were not contained in one entire and connected request to charge. The court, however, did give an entire charge at the request of complainant's solicitors, which covered all the questions involved which they thought essential to their theory of the case, and which went into detail as to the issues proper to be presented for the consideration of the jury. This request undertook to sum up hypothetically the evidence bearing upon the issues between the parties. It made no allusion to the facts in proof which were most essential to the elucidation of the real issues involved, and the summing up was, though unintentionally so, unfair and partial; the defendant's theory of the case was wholly omitted; and the question upon which he mainly rested his defence seems to have been overlooked or purposely ignored. A single legal idea pervaded this request, and that was to get rid of the effect of prescription upon the rights of the complainant as set forth in his bill—a principle which, as we have shown, had no application to the case.

It is insisted that as this request covered various questions, and as the exception to it was general and not specific, it cannot be considered by this court, under its former rulings and practice; that the general charge of the court is not brought up in the record, and it must be presumed, in the absence of objections, that it was correct and laid down all the law applicable to the case as made. Generally this is true; but it would be going too far to entertain such a presumption, where the request refused and that given directly contravene, and are wholly inconsistent with it. To specify the decisions complained of was to point out plainly the errors alleged to exist therein; they were either wholly right or wholly wrong; each of them dealt with a single principle broadly laid down, without qualification or condition.

There is no controversy between these parties, as to any

matter relating to the contract sought to be specifically enforced, down to the sheriff's attempted sale of the property embraced therein.   This sale, with its accompanying incidents, either changed the relations and rights of the parties, as they existed under the contract prior to the time, to the property in question, or it did not    There is no dispute that the property was pointed out by the complainant to be levied on ; that this was done with his full knowledge and approbation, and that the sale took place, according to his version of the matter, in pursuance of an agreement between him and the defendant; the latter denies the existence of any such agreement, and especially that there was any agreement at all which included the mineral interest in the lot in question.   The great fact on which he insists was the consent of the defendant that this right to this mineral interest should pass from him at that time and in the manner that it did; he contends that, whether the deed made and filed to the property was recorded before the levy was made, under which the sale took place, is immaterial; that it is a circumstance pointing directly to the complainant's abandonment of his claim to any part of the property, and charging him with notice of defendant's adverse holding of this mineral interest from that time forth.   This position, if founded in fact, about which there is dispute, is unassailable, and was a question to be passed upon by the jury, under proper instructions from the court.   Such instructions he requested, but they were refused, and others were substituted for them which ignored entirely the principal question upon which the case turned.   It was not pretended, during the existence of the contract assigned to complainant, that the defendant held the lot, number 288, otherwise than subject to the complainant's right to have the mineral interest with the attendant easements, upon his compliance with the conditions of contract; the contention was that the contract was performed ; that the defendant held this interest adversely to the complainant; that the complainant was charged

with notice of such adverse holding, and had acquiesced therein for a sufficient length of time to bar any remedy upon the contract touching said mineral interest.

The precise rule upon this subject was laid down in *Scott vs. Haddock,* 11 *Ga.* 258, 264. After quoting and adopting the decision · in Zeller's, Lessee *vs.* Eckert *et al.,* 4 Howard R., 296, and disapproving the charge of the lower court, " that it was incumbent on the trustee to have given *notice* to the *cestuis que trust* that he held and claimed. the trust property adversely to their title," this court maintained the doctrine declared in the case they cited, " that the statute of limitations does not begin to run until the possession of the trustee—before consistent with the title of the true owner—becomes adverse, tortious and wrongful by the disloyal acts of the trustee, which must be open, continuous and notorious, so as to preclude all doubt as to the character of the holding of the property, or the want of knowledge on the part of the *cestuis que trust.*" Though the defendant in this case was never a technical trustee for the complainant as to the interest in dispute, yet he did sustain to him and the property such a confidential relation as practically made him a trustee. If the defendant is right in his version of their dealings, if the complainant consented to the sale of this property by the sheriff, or if, after its sale, he purchased and took from the defendant a portion of the property thus sold by the sheriff, and left the defendant in the possession of the mineral interest after that time, then he surely had knowledge of the defendant's adverse holding of the same from that time, and if the statutory period under this holding had elapsed before the institution of this suit, the complainant's remedy is barred. These several issues of fact should be separately and distinctly submitted to the jury ; and the decree rendered should be in accordance with their finding. Inasmuch as these material issues were not submitted, we think this case should be remanded for another hearing.

We express no opinion, of course, as to how these issues should be found, or as to the weight of the testimony, whether it preponderates in favor of one party or the other. We determine that these issues should be submitted to the jury, that they may find them as they think the evidence requires.

Judgment reversed.